TANKS *v.* STATE.

Opinion delivered June 27, 1903.

1. MURDER—SUFFICIENCY OF EVIDENCE.—The evidence in a murder case showed that deceased, in a playful mood, was endeavoring to take a pistol from defendant's pocket, and that in the struggle the pistol was discharged, apparently by being caught in the pocket. *Held* that the evidence was insufficient to support a conviction of murder in the second degree. (Page 460.)

2. SAME—CRUEL AND UNUSUAL KILLING.—Killing a person with a pistol is not a killing in a cruel and unusual manner within Sand. & H. Dig., § 1660, providing that "the killing of a human being, without a design to effect death, in the heat of passion, but in a cruel and unusual manner, unless it be committed under circumstances that would constitute excusable or justifiable homicide, shall be adjudged manslaughter." (Page 461.)

3. SAME—INSTRUCTION.—In a prosecution for murder, an instruction that, if the evidence failed to satisfy the jury beyond a reasonable doubt of the guilt of defendant, it was their duty to give him the benefit of such doubt and acquit, was improperly modified by adding the words, "unless you further believe that the killing by tne defendant has been established by the state, and the defendant has failed to show by the evidence that he was justifiable or excusable." (Page 462.)

4. SAME—BURDEN OF PROOF.—Where the evidence in a murder case established that defendant at most was guilty only of manslaughter, it was error to charge that the burden was on defendant to show justification after proof by the state of the killing; it being provided by Sand. & H. Dig., § 1643, that "the killing being proved, tne burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounts to manslaughter. (Page 462.)

Appeal from Ashley Circuit Court.

ZACHARIAH T. WOOD, Justice.

Reversed.

*Robert E. Craig,* for appellant.

The indictment is insufficient. 2 Bish., Cr. Pro., § 527-534;
55 Ark. 558; 70 Ark. 523; 65 S. W. 249. The argument of coun-
sel was prejudicial. 62 Ark. 133; 58 Ark. 473. It was error to
take the pistol to the jury room. 51 Ark. 553. A new trial should
have been granted on the ground of surprise. 18 Ark. 570; 20
Ark. 53; 26 Ark. 496.

*George W. Murphy, Attorney General,* for appellee.

The testimony of the jurors to support the motion for new
trial was improper. Sand. & H. Dig., § 2269.

BUNN, C. J. This is an indictment for murder in the first
degree, tried at the January term, 1903, of the Ashley circuit
court, and resulting in a conviction of the defendant for murder in
the second degree. Motion for new trial made and overruled, and
judgment upon the verdict, and defendant appealed to this court.

The evidence in the case does not justify the verdict of the
jury for murder in the second degree, the offense being murder in
the first degree or involuntary manslaugher, if anything. There is
absolutely no evidence upon which the charge of murder in the
first degree can be supported, since it is not shown that the defend-
ant did the killing, nor is there any evidence whatever that he had
deliberated upon or premeditated the killing or designed it in any
way, nor was there shown any motive in the defendant to commit
such a crime. The facts are that a party of young people had been
in attendance upon the session of a debating society, and were re-
turning to their homes in a frolicsome and merry mood, laughing
and talking good-humoredly as they went. One of the party had a
pistol, but, being without a coat in which to carry the pistol, or,
more probably, with which to conceal it, gave it to the defendant,
who wore a coat, to carry it for him. The defendant was walking
abreast with the deceased girl, Emiline Mooney, and another, and
the deceased in a playful mood was endeavoring to take the pistol
from his pocket, the muzzle being up. The defendant was en-

deavoring to prevent her getting the pistol. In the struggle between them, the pistol was discharged, apparently by being caught in the pocket, and in the effort of the deceased to draw it out. The ball entered and went through the head of deceased, killing her instantly, the pistol dropping to the ground.

Such was the evidence on the part of the defendant, and the state could adduce none to the contrary, and relied mainly upon inferences and conclusions to be drawn from the act of carrying a pistol in violation of law and other circumstances even of less conclusiveness, and upon the careless manner in which the pistol was carried and handled. If any evidence could have been adduced showing a previous design and present intent to commit the homicide on the part of the defendant, the jury, of course, might have found the defendant guilty of murder, but none such was adduced in the trial.

In this state of case, the trial court failed to instruct the jury on the subject of involuntary manslaughter and to define the same, and this was made a ground of objection by the defendant, especially as the court in instructions had defined the higher grades of homicide. This, of itself, might not have been greatly prejudicial to the defendant, but the peculiar wording of its definition of manslaughter was calculated to mislead and confuse the jury in their efforts to make an application of it to the facts of this case. That instruction, which is a literal copy of section 1660 of Sand. & H. Dig., reads as follows, to-wit:

"The killing of a human being without design to effect death, in the heat of passion, but in a cruel and unusual manner, unless it be [committed] under circumstances that would constitute excusable or justifiable homicide, shall be adjudged manslaughter, and if you believe from the evidence that Wesley Tanks did not design, in the heat of passion, to effect the death of Emiline Mooney, yet, if you further believe that he did kill her in a cruel and unusual manner, and without excuse, then he will be guilty of manslaughter."

The statute was evidently intended to cover a case of homicide committed unintentionally, but with such wanton savagery and cruelty, and in such an unusual manner, as to imply recklessness or design.

In one sense, it is true, all killing is cruel, but in the sense of this statute killing with such a common and effective instrument of death as a pistol can not be regarded as cruel; still less is this

manner of death unusual. Illustrations of the difference might easily be given; thus, where a person or a number of persons undertake to torture and maltreat another, without the design to kill, and carry their treatment to such an extent as to result in death, it would not be manslaughter, notwithstanding the absence of design to kill. It was, of course, prejudicial error to make application of this statute to the case at bar.

The defendant asked the court to give the fourth instruction which is as follows, to-wit: "You are instructed that the burden is on the state to prove that the defendant is guilty as charged in the indictment, and if the evidence fails to satisfy your minds beyond a reasonable doubt of the guilt of the defendant, then it is your duty to give him the benefit of such doubt, and acquit. If any reasonable view of the evidence is or can be adopted which admits of a reasonable doubt of the guilt of the defendant, then it is your duty to adopt such view and acquit." This instruction was proper, and should have been given as asked, but the court modified it by this addendum, "unless you further believe that the killing by the defendant has been established by the state, and the defendant has failed to show by the evidence that he was justifiable or excusable in committing the act." The instruction as asked sufficiently defined the law as to reasonable doubt. The modification was not only unnecessary, but positively harmful to the defendant, in this that it had the effect of rendering negative the rule on the subject of reasonable doubt which had been laid down in the instruction as asked, and thus the defendant was deprived of the benefit of the reasonable doubt, the very thing, or at least one of the things, he was claiming the benefit of in asking the instruction.

Moreover, in this instruction, as well as in the eleventh instruction given by the court, and possibly in others, the idea is involved that the burden of proof is shifted to the defendant when once the killing has been proved by the prosecution. The idea or theory appears to be based upon the language of section 1643 of Sand. & H. Dig., which reads as follows, to-wit: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide."

Now, in this case it is, we think, sufficiently manifest that the evidence on the part of the prosecution shows that the offense committed only amounted to manslaughter, at most. This being true, it follows that, under the statute quoted, there could be no shifting of the burden of proof from the state to the defendant in this case. Therefore, wherein in the instructions given, and in the modifications of those asked by the defendant and given as modified, this theory of the shifting of the burden of proof is given or suggested to the jury as the law of the case, there is error.

For the errors indicated above, the judgment is reversed, and the cause remanded for a new trial.