(No. 5843. December 1, 1932.)

STATE, Respondent, v. FRED COPENBARGER, Appellant.

[16 Pac. (2d) 383.]

J. W. Taylor, for Appellant.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

LEEPER, J.—The defendant, Fred Copenbarger, was convicted of second degree murder, and appeals from the judgment and an order denying a motion for a new trial. In disposing of this appeal it is unnecessary to discuss the facts other than to state that the prosecution in making its case in chief introduced admissions made by the defendant to the police officers at the time of the arrest to the effect that he had killed the deceased in self-defense, and describing circumstances connected with the killing which might logically tend to that conclusion. These admissions constitute the only evidence directly connecting the defendant with the homicide, and themselves *tend to show* that the killing was in self-defense. The state also

produced proof of certain physical facts which, if believed, would permit the conclusion to be drawn that deceased was shot in the back, and otherwise disputing the statements contained in the admissions of the defendant.

The state assumes two positions on this appeal: (1) That the facts proved are sufficient to sustain the inference of malice; (2) that, whether or not there is sufficient proof of malice, the state is entitled to a presumption thereof which arises in its favor immediately upon proof of the killing by the defendant, that this presumption stands in lieu of direct evidence and is sufficient to sustain the conviction of second degree murder. In view of the fact that reversible error has been committed by the court in its instructions with reference to this second position assumed by the state, we shall not discuss the assignment relative to the insufficiency of the evidence to sustain the conviction. The inquiry necessarily involves a construction of C. S., sec. 8952, which reads as follows:

"Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

This statute codifies a rule of evidence which has persisted in the common law of England and America since earliest times.

The rule seems to have been well established in England that "where it appears that one person's death has been occasioned by the hand of another, it behooves that other to shew from evidence, or by inference from the circumstances of the case, that the offense is of a mitigated character, and does not amount to the crime of murder." (*Rex v. Greenacre*, 8 Car. & .P. 35, 173 Eng. Reprint, 388.) "The prosecutor is not bound to prove that the homicide was committed from malice prepense. If the homicide be proved, the law presumes the malice." (*Reg. v. Maloney*, 9 Cox C. C. 6.)

A complete exposition of the early English law on the

subject is set out in *Commonwealth v. York,* 9 Met. (Mass.) 93, 43 Am. Dec. 373. The rule as developed in England prior to and after the American decisions and statutes is almost exactly that of our statute setting out the burden of proof in homicide cases (C. S., sec. 8952). (*Reg. v. Maloney, supra; Rex v. Greenacre, supra; The King v. Oneby,* 2 Ld. Raym. 1485, 92 Eng. Reprint, 465; *Reg. v. Mawgridge,* Kel. 119, 84 Eng. Reprint, 1107; *Mackalley's Case,* 9 Co. Rep. 65b, 77 Eng. Reprint, 828; *Reg. v. Kirkham,* 8 Car. & P. 115, 173 Eng. Reprint, 522.)

The leading American case on the subject is *Commonwealth v. York, supra,* wherein the court said:

" . . . . When the fact of voluntary homicide is shown, and this is not accompanied with any fact of excuse or extenuation, malice is inferred from the act; that this is a fact that may be controlled by proof; but the proof of it lies on the defendant; and if not so proved, it cannot be taken into judicial consideration."

Other leading early American cases are: *People v. McLeod,* 1 Hill (N. Y.), 377, 37 Am. Dec. 328; *Pennsylvania v. Honeyman,* 1 Addis. (Pa.) 146; *Pennsylvania v. Bell,* 1 Addis. (Pa.) 155, 1 Am. Dec. 298; *Pennsylvania v. Lewis,* 1 Addis. (Pa.) 278; *O'Mara v. Commonwealth,* 75 Pa. St. 424; *State v. Zellers,* 7 N. J. L. 220.

The rule has been carried into the jurisprudence of every state in the Union, either by adoption of the common law or by enactment into the statute law. It is to be noted that many of these early cases required the defendant to show mitigation or justification by a preponderance of the evidence, which is yet the law in some jurisdictions. The Idaho statute (C. S., sec. 8952) has been considered by this court in *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, *State v. Rogers,* 30 Ida. 259, 163 Pac. 912, *State v. Wilson,* 41 Ida. 598, 242 Pac. 787, and *State v. Jurko,* 42 Ida. 319, 245 Pac. 685, wherein the court repudiated this doctrine, and held that the proof of defendant only had to be sufficient to create a reasonable doubt to authorize acquittal. This

phase of the law was correctly covered in the instructions in this case.

■ The statute expressly provides that the burden passes to the defendant "unless the proof in the case *tends to show* that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." In other words, when the commission of the homicide is proved, malice and felonious intent are presumed unless the proof of the state shows otherwise.

Where the state's case is bare of exculpatory evidence there is no question as to the application of the rule contended for by the attorney general. (*People v. Milner,* 122 Cal. 171, 54 Pac. 833.) But if such be the case, the presumption excludes first degree murder and includes second degree murder, only.

"When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree. *People v. Knapp,* 71 Cal. 1, 6, 11 Pac. 793; *People v. Ford,* 85 Cal. App. 258, 263, 258 Pac. 1111." (*People v. Howard,* 211 Cal. 322, 295 Pac. 333, 71 A. L. R. 1385.)

■ But the rule is not applicable here, because there was evidence produced by the state which *tended to show* that defendant acted in self-defense and was not guilty, i. e., his admissions to the public officers. The difficulty with the state's position is that it seeks the benefit of the presumption, even though it presented evidence in extenuation.

■ The three instructions given by the court covering this phase of the case are Nos. 26, 31 and 50, as follows:

"No. 26. You are instructed, gentlemen of the jury, in the language of section 8952 of the Idaho Compiled Statutes: 'Upon a trial for murder, the commission of the homicide being proved, the burden of proving circumstances in mitigation, or that justify or excuse it, devolves upon him, unless the proof *in the case* tends to show that the crime

committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'

"Proof of homicide by the defendant justifies the presumption that the killing was felonious and, unless the proof on the part of the prosecution shows that the crime committed was manslaughter only, or that the killing was justifiable or excusable, this section casts upon the defendant the burden of proving circumstances of mitigation or that justify or excuse the commission of the homicide. This does not mean that the defendant must prove such circumstances of mitigation or of excuse or of justification beyond a reasonable doubt or even by a preponderance of the evidence. He is only bound, under this rule, to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged. It can make no difference whether this reasonable doubt is the result of the evidence on the part of the defendant tending to show circumstances of mitigation, or that justify or excuse the killing or from other evidence coming from him or from the prosecutor."

"No. 50. *The court instructs the jury that while the burden of proving the circumstances in justification of a homicide rests with* the defendant, still he is not required to establish such circumstances beyond a reasonable doubt, or even by a preponderance of the evidence. In this respect, all that the defendant can be required to do, is to establish the circumstances to such an extent that the jury, after considering the whole evidence in the case, have a reasonable doubt as to his guilt. So, in this case, if, after considering all the evidence, you have a reasonable doubt as to whether the defendant acted in self defense, then you must acquit him."

"No. 31. You are instructed, gentlemen, that in a trial for homicide the defendant is not required to establish circumstances in mitigation or that justify or excuse his acts, either beyond a reasonable doubt or by a preponderance of the evidence, but is only bound to prove such circumstances as any fact is to be proven, and if the proof on the whole

creates a reasonable doubt of the defendant's guilt, he is entitled to an acquittal."

Instruction No. 26 attempts to quote the statute, but in so doing leaves out the highly significant words "by the defendant" after the word "homicide." The balance of the instruction imposes the presumption, and again attempts to reiterate that portion of the instruction containing the exception, but in so doing states "unless the proof on the part of the prosecution *shows* that the crime, etc.," where the statute uses the much broader term "tends to show." In instruction No. 50 the court squarely told the jury that the "burden of proving circumstances in justification of a homicide rests with the defendant," which is not true unless the state's case is devoid of evidence "tending to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." Instruction No. 31, though not so positive, is similar to instruction No. 50 in its general import, and is subject to the same criticism.

We shall not attempt to analyze the mass of precedent which lies behind a discussion of this situation. The soundest statement of the law which has come to our attention involving circumstances almost identical with those with which we are dealing is contained in *Green v. State*, 124 Ga. 343, 52 S. E. 431, wherein the supreme court of Georgia said:

"Though some other courts lay down a different rule, it is now a well-established rule in this state that, where a killing of a human being is proved, and the evidence adduced to establish the killing does not show circumstances of justification or alleviation, malice will be inferred. But if the evidence relied upon by the state to show the killing contains circumstances of alleviation or justification, the burden of proving that the crime was murder is not shifted. Until malice is shown, one vital element of the offense is lacking. This element, as we have seen, may be presumed to exist when by the evidence proving the homicide no circumstances of mitigation appear. 'The law presumes every homicide to be felonious until the contrary appears from

circumstances of alleviation, excuse or justification; and it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him.' *Hudgens v. State,* 2 Ga. 188. 'In every case of murder,' says Mr. Justice Foster, 'the fact of killing first being proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him; for the law presumes the fact to be found in malice, until the contrary appears. Foster, 255.' Hopkins, Pen. Code, 1895, § 858. But in the case at bar, whether the jury base their finding that the defendant did the killing upon the admissions of the accused himself, or upon the testimony of witnesses in the case, they could not have found the fact of killing except from evidence or from admissions which carried, in close and immediate connection with the proof of the killing, circumstances of necessity, excuse, or mitigation. Of course, where the evidence or admission which establishes the fact of the killing contains also circumstances of the character just indicated, it would be within the province of the jury to accept the entire testimony, and give full effect to the circumstances reducing the killing from murder to some other lower grade of offense than murder, or to find it justifiable homicide, or they might reject entirely all of the evidence of an exculpatory nature, if under all the proved facts and circumstances they disbelieved the same, and believe only that which tended to fix guilt upon the accused; *but the charge should have been so adjusted to the facts to allow the jury the free exercise of their functions.* The jury was authorized in this case to find that the defendant did the killing from the admissions of the defendant herself, but in connection with that admission, she stated strong facts of mitigation, excuse and justification. So also, the testimony of the two witnesses, Mick Smith and Pope Means, would have authorized the jury to have found the defendant committed the homicide; but it likewise is true of their evidence that it contains circumstances of mitigation, for in the same breath in which they establish the

killing, they show circumstances of necessity or palliation, and these would have negatived the presumption of malice which would otherwise arise upon the bare proof of the homicide, had the jury from all the evidence believed them to be true.'' (Italics ours.)

Other cases which uphold this general construction are: (Common law) *Mann v. State,* 124 Ga. 760, 53 S. E. 324, 4 L. R. A., N. S., 934; *Jones v. State,* 29 Tex. App. 20, 25 Am. St. 715, 13 S. W. 990; *Pratt v. State,* 50 Tex. Cr. 227, 96 S. W. 8. (Statutory) *Tanks v. State,* 71 Ark. 459, 75 S. W. 851; *Bryant v. Territory,* 12 Ariz. 165, 100 Pac. 455; *Spence v. Territory,* 13 Ariz. 20, 108 Pac. 227; *Prince v. United States,* 3 Okl. Cr. 700, 109 Pac. 241; *Culpepper v. State,* 4 Okl. Cr. 103, 140 Am. St. 668, 111 Pac. 679, 31 L. R. A., N. S., 1166; *Lumpkin v. State,* 5 Okl. Cr. 488, 115 Pac. 478; *Williams v. State,* 9 Okl. Cr. 206, 131 Pac. 179; *Brown v. State,* 15 Okl. Cr. 64, 175 Pac. 66; *Jones v. State,* 20 Okl. Cr. 233, 202 Pac. 187; *People v. Elliott,* 80 Cal. 296, 22 Pac. 207; *People v. Estrada,* 60 Cal. App. 477, 213 Pac. 67; *People v. Bannon,* 59 Cal. App. 50, 209 Pac. 1029; *People v. Byler,* 35 Cal. App. 208, 169 Pac. 431; *State v. Dewey,* 41 Utah, 538, 127 Pac. 275.

The position imposed upon the state, when the commission of the crime by the accused is proven only by admissions containing exculpatory matter, is thus stated in *Pratt v. State,* 50 Tex. Cr. 227, 96 S. W. 8:

''The admissions and confessions of appellant that he killed deceased were admitted, and in connection, and as a part of this statement, his further statements were admitted that he did it in self-defense. It is contended that, this being true, the burden is upon the state to prove the falsity of the defendant's statement that he killed deceased in self-defense. The state, to a very considerable extent, relied upon the admissions or confessions of appellant. There was no eye witness to the transaction. . . . . Now, under these confessions, it is contended that the court should have charged the jury that it was incumbent upon the state to disprove the statements of appellant which suggested the

issue of self-defense; and in support of this we are cited to *Jones v. State*, 29 Tex. App. 20, 13 S. W. 990, 25 Am. St. 715. We believe that, under the authority of that case, and those cited therein, this charge should have been given.''

 Section 1105 of the California Penal Code is identical with section 8952 of our code except in this one particular, i. e., it provides, ''unless the proof *on the part of the prosecution,* etc.'' whereas C. S., sec. 8952, provides, ''unless the proof *in the case* shows, etc.'' As we construe it the words ''proof in the case'' as used in C. S., sec. 8952, mean ''proof on the part of the prosecution.'' Otherwise the section would be meaningless. In construing section 1105, the court of appeals of California said, in *People v. Bannon*, 59 Cal. App. 50, 209 Pac. 1029:

''It is clear that the meaning of section 1105 is this: If the proof on the part of the prosecution tends to show that the homicide amounts only to manslaughter, or that it was justifiable or excusable, then no burden is placed on the defendant to prove any circumstances of mitigation, or that justify or excuse it.''

 We do not mean to say that, under the circumstances, the jury is required to believe the exculpatory matter contained in defendant's admissions. The only effect of the rule is to deprive the state of the benefit of the presumption of malice, and to require it to disprove the exculpatory matter introduced by it. Obviously, if the state itself proves self-defense without contradiction, no conviction could be had. When, however, the state does introduce evidence which contradicts the exculpatory evidence contained in the admissions of the defendant, the jury must pass upon the conflicting evidence and resolve it in favor of the state or of the defendant, in accord with the rules as properly stated by the trial court. The burden, however, is always upon the state to rebut the exculpatory evidence contained in its own case made by competent evidence, and in such case the burden does not ever shift to the defendant.

The omission of the words ''by the defendant'' from instruction No. 26, so as to cause the instruction to read,

"Upon a trial for murder, the commission of the homicide being proved, etc.," has been held reversible error by the supreme court of California in *People v. Post*, 208 Cal. 433, 281 Pac. 618, in the following language:

"It is thus made plain that while the section of the Penal Code above quoted requires the presentation of proof of the commission of the homicide *by the defendant* before the burden of presenting evidence tending to prove circumstances in mitigation, justification or excuse, the instruction by its terms placed no such requirement upon the prosecution, but, on the contrary, informed the jury that, from and after the moment in the trial of the cause when the killing was proved, the burden shifted to the defendant to establish whatever circumstances in mitigation, justification, or excuse of the homicide might constitute his defense. It will thus be seen that an entirely different rule is declared in this instruction for the shifting of the burden of proof from that which the terms and intent of the foregoing section of the Penal Code provides. The importance of this variation, so far as it may be found to have constituted prejudicial error, is discovered when the facts of the instant case come under review."

Again in instruction No. 26, the court said: "Proof of the homicide by the defendant justifies the presumption that the killing was felonious and unless the proof on the part of the prosecution *shows* that the crime committed was manslaughter only, or that the killing was justifiable or excusable, this section casts upon the defendant the burden of proving circumstances of mitigation or that justify or excuse the commission of the homicide." Here the court again departed from the statute in that he told the jury that the burden shifted to the defendant "unless the proof on the part of the prosecution *shows* etc." The statute says "tends to show," a greatly lesser degree of proof.

Otherwise instruction No. 26, so far as it goes, appears to be a correct statement of the law, and if it stood alone the defects which we mention might not be prejudicially erroneous in the light of the record in this case, although we do

not so decide. It should, however, be corrected in the particulars mentioned. A substantially similar instruction was approved by this court in *State v. Jurko, supra,* but only in connection with the degree of proof required to be produced by the defendant, *where the state's case was absolutely devoid of exculpatory evidence.* The matter now before us was not presented by the record and was not considered in that case. An instruction somewhat similar to instruction No. 50 was considered by us in *State v. Wilson, supra,* but in that case also the court was only concerned with the degree of proof, the state's case being likewise devoid of exculpatory evidence. The question which we are now deciding is one of novel impression in this state.

The defendant is by statute (C. S., sec. 8944) entitled to a presumption of innocence, and the burden is always upon the state to prove him guilty beyond a reasonable doubt. The operation of C. S., sec. 8952, does not tend to relieve the state of that burden, even in cases where it is applicable, but merely goes to the *quantum* of proof.

"Section 38 of the act of 1850, 'concerning crimes and punishments,' and section 1105 of the Penal Code do not change the rule which casts on the prosecution the burden of proving (beyond a reasonable doubt) the act of a defendant to be a crime. They fix the *quantum* of evidence which is necessary to overcome the proof on the part of the prosecution which, until it is overcome, establishes beyond a reasonable doubt the guilt of the defendant." (*People v. Rodrigo,* 69 Cal. 601, 11 Pac. 481.)

After a careful review of all of the instructions given in this case relative to the burden of proof we conclude that they are contradictory and may have confused and misled the jury, under which circumstances we are required to reverse the judgment. (*State v. Webb,* 6 Ida. 428, 55 Pac. 892; *State v. Bowker,* 40 Ida. 74, 231 Pac. 706; *State v. Hines,* 43 Ida. 713, 254 Pac. 217; *State v. Stewart,* 46 Ida. 646, 270 Pac. 140.) It cannot be said that this defendant was not prejudiced by the giving of instructions Nos. 50 and 31, which squarely advised the jury that the burden was

upon him to create the doubt as to his guilt, even though the rule was correctly stated elsewhere. As stated in *State v. Stewart, supra:*

"The instruction deprives the defendant of the presumption of innocence and imposes on him the burden of establishing, beyond a reasonable doubt, that he did not commit the crime charged against him. That is not the law. (C. S., sec. 8944.) The attorney general admits that the instruction is erroneous, but takes the position that, when the instructions are considered as a whole, no prejudice is shown. The fallacy of his position lies in the fact that the instruction complained of is in conflict with those which are said to render it harmless. It is frequently the case that an instruction which is inaccurate or incomplete may be cured by a correct statement of the law in another instruction, but an instruction which places on the defendant the burden of establishing his innocence is not cured by an instruction which states the rule correctly. Contradictory instructions tend to confuse and mislead a jury; and, in this case, it is not possible to determine that the jury did not follow the erroneous instruction. How, therefore, can it be said that appellant was not prejudiced?"

In a homicide case this burden can only be imposed upon a defendant in strict accord with the requirements of C. S., sec. 8952, this section being in derogation of C. S., sec. 8944, and describing the *quantum* of proof necessary to shift the burden. This is not a case where the evidence was conclusive as to the guilt of defendant, but, on the contrary, the issue is in grave doubt. At best the state can only say that the evidence is conflicting, and had this instruction been omitted the jury might reasonably have concluded that the state had not sustained its burden; whereas if it relied upon the instruction it might have concluded that the defendant had not sustained the burden thus unwarrantedly placed upon him.

In view of the fact that there must be a new trial, we shall comment briefly on other assignments of error made by appellant. Under assignment No. 3 he urges

error in the giving of instruction No. 13, wherein the court said, "And whenever the fatal act is committed deliberately, the law presumes that it has been done in malice," the point being made that the language necessarily excludes the defense of self-defense, which may be involved in a deliberate killing. If the instruction stood alone the objection would undoubtedly be well taken, but considered in connection with the very full instructions given pertaining to self-defense, it is doubted if there was prejudicial error. Upon retrial it would be well to qualify this part of the instruction with language substantially as contained in instruction No. 14, to the effect that malice will be inferred "in the absence of proof that the act was done in necessary self defense or upon sufficient provocation or cause." This will bring into accord with the statute (C. S., sec. 8952).

 With reference to instruction No. 25, while it is correct in substance, it may reasonably be concluded that its wording might cause some confusion. It reads as follows:

"The court instructs you, gentlemen of the jury, that words, threats, menaces, or contemptuous gestures are not sufficient to justify or excuse an unlawful killing or to reduce it to manslaughter. There must be, in order to reduce an unlawful killing to manslaughter, such an assault, or other equivalent circumstances, sufficient, in the opinion of the jury, to excite the passion and exclude all idea of deliberation whatever."

An unlawful killing is either murder or manslaughter, and can neither be justified nor excused. If it is justifiable or excusable, the killing is not unlawful. Inasmuch as self-defense is separately dealt with in subsequent instructions it would be better, in giving the instruction, to confine it to mitigation only, which seems to be its manifest purpose. If it is expected to apply it as now written to the defenses of justification and excusability, the term "unlawful killing" is wrongly used and the instruction is manifestly incomplete since threats and menaces, if coupled with apparent ability to inflict harm, might reasonably sustain a plea

of self-defense under certain circumstances. It is also to be noted that the latter part of the instruction does not correctly state the *quantum* of evidence required for an acquittal, and contradicts the true rule as set forth in instruction No. 21. The jury is only required to have a reasonable doubt as to the existence of the elements of murder in order to mitigate the verdict. In other words, the defendant is not required to prove mitigating circumstances to the satisfaction of the jury, but is only required to present such proof as will create a reasonable doubt. While the law is correctly stated elsewhere in the instructions, this one should be corrected upon retrial.

Appellant complains in specification No. 5 of misconduct of the prosecuting attorney in asking impeaching questions of appellant's witnesses and not following them with impeaching evidence. We have frowned upon this practice in *State v. Bush*, 50 Ida. 166, 295 Pac. 432, and no doubt it will not prevail on retrial. While it appears that appellant did not preserve his objections in the record, and therefore does not fall within the purview of the Bush case, the practice is highly unfair to a defendant under any circumstances and should never be indulged in.

With reference to the instructions offered by defendant and refused by the court, we do not find any error. The instructions given fully, fairly and completely defined the law of self-defense, and covered substantially every material thing contained in those rejected. No error can be predicated on this point. (*State v. Cosler*, 39 Ida. 519, 228 Pac. 277; *State v. Sayko*, 37 Ida. 430, 216 Pac. 1036; *State v. Petrogalli*, 34 Ida. 232, 200 Pac. 119.)

Appellant also complains of the action of the court in admitting evidence of experiments relative to gunshot penetration. The particular experiments were made upon pieces of cardboard, wood, cloth fibre and a piece of beef rib, to demonstrate the physical appearance of points of entrance and exit of the bullet. While experiments, in order to be competent, must be based upon circumstances and conditions reasonably similar to those surrounding the

fact in issue to be proved, the question of similarity is ordinarily for the determination of the trial court, this rule having been adhered to by this court in *Kelly v. Troy Laundry Co.*, 46 Ida. 214, 267 Pac. 222:

"In most respects the conditions were substantially similar. It is not necessary that they should in all respects have been identical; and the objection to such comparative evidence is not addressed to its admissibility but to its weight. (*People v. Phelan*, 123 Cal. 551, 56 Pac. 424; note, 8 A. L. R. 1; 10 R. C. L. 1001, par. 189.) The similarity of the circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse."

As stated by the supreme court of Oregon, these circumstances and conditions do not have to be exactly like those surrounding the event—only reasonably similar:

"The conditions do not have to be, as we understand it, exactly alike, in order to sustain the admission of the experimental testimony. Such testimony is largely in the discretion of the court and it is only necessary that the facts of the experiment be reasonably similar to those in the main contention and not misleading in their character. . . . . The authorities are not very definite as to just how closely similar the conditions of the experiment must be to the facts in contention, in order to make the experiment admissible. We think, however, a fair statement of the rule would be that if the experiments are not likely to be misleading to the jury in any particular, and are under conditions similar, so that they would be of assistance to the jury in arriving at a correct verdict, the evidence is admissible." (*Kohlhagen v. Cardwell*, 93 Or. 610, 8 A. L. R. 11, 184 Pac. 261.)

Nor does the fact that the experiments were made with the view of testifying affect their competency. (22 C. J. 756, sec. 849.) The objection only went to the weight of the evidence, and we cannot say that this evidence would not shed some light upon the question at issue, i. e., the

course of the bullet through the body of the deceased. It was therefore properly admitted.

Since the case is to be reversed on the merits, we are not required to pass upon the appeal from the order denying a new trial.

The judgment is reversed and the case is remanded for a new trial.

Lee, C. J., and Givens and Varian, JJ., concur.

BUDGE, J., Concurring in Part and Dissenting in Part.— I concur in the majority opinion except that I am not in harmony with the disposition made of instruction No. 26 with respect to the omission, in quoting the statute, of the words "by the defendant" since in another part of the same instruction and as a part thereof and in the same connection the words "by the defendant" are used. I am satisfied that the jury could not have been and was not misled by the omission referred to, nor by reason of the use of the word "show" instead of "tends to show." The words "tends to show" are included in the same instruction in the same connection in the quotation of the statute. No possible prejudice could have resulted to the defendant and the jury could not have been misled by the giving of instruction No. 26.

Neither, in my opinion, was the giving of instruction No. 31 erroneous. It has application only to the *quantum* of proof and states the general rule of law in respect thereto correctly. It is general in its nature and not prejudicial to the defendant, especially when read and considered with all of the instructions given.

Out of deference to the opinion of my associates, and resolving the doubt in favor of the appellant, I concurred in the reversal of the judgment and granting of a new trial based upon instruction No. 50, which may have influenced the jury in that they may have concluded that the burden of proof rested upon the defendant, which was not correct in this case.