#28295-a-DG
**2018 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *


RICHARD PAUL MADETZKE,                           Petitioner and Appellant,

    v.

ROBERT DOOLEY, WARDEN of
the Mike Durfee State Prison,                           Respondent and Appellee.


* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *
THE HONORABLE JOSEPH NEILES
Retired Judge
* * * *


MARK KADI
LYNDSAY DEMATTEO of
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota                    Attorneys for petitioner and
                                             appellant.


MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                         Attorneys for respondent
                                             and appellee.


* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2018
OPINION FILED **05/09/18**

#28295

GILBERTSON, Chief Justice

[¶1.]        Paul Madetzke pleaded guilty to second-degree robbery, for which he was sentenced as a habitual offender to imprisonment for 25 years.  Madetzke did not appeal his conviction or sentence; instead, he later petitioned for a writ of habeas corpus.  The habeas court denied relief, and Madetzke now appeals that decision.  He contends that the assistance he received from his trial attorney was ineffective in regard to his decision to plead guilty and in regard to sentencing.  We affirm.

## Facts and Procedural History

[¶2.]        Madetzke was arrested on suspicion of robbing a casino in Sioux Falls on September 24, 2011.  The State filed a criminal complaint against Madetzke that alleged one count of second-degree robbery in violation of SDCL 22-30-1 and -6, and one count of grand theft of more than $1,000 in violation of SDCL 22-30A-1 and -17(1).  A grand jury indicted Madetzke on the same two charges.  The State then filed a habitual-criminal information alleging that Madetzke had been previously convicted of four felonies: one conviction for intentionally damaging property, two convictions for fourth-degree burglary, and one conviction for driving under the influence as a third offense.  Although the information did not specifically allege that any of Madetzke's prior convictions were for violent offenses, the information cited SDCL 22-7-8, which applies when "one or more of the prior felony convictions was for a crime of violence[.]"  During this time, Madetzke was also facing charges for robbing another casino in Lincoln County.

[¶3.]        On November 17, 2011, the Honorable Peter Lieberman arraigned Madetzke.  In hand-written notes on the habitual-criminal information, Judge

-1-

Lieberman indicated that Madetzke's previous conviction for intentionally damaging property was a violent offense. At the hearing, Judge Lieberman explained that if convicted, Madetzke's offense of second-degree robbery would be sentenced as a Class C felony, which carries a maximum penalty of imprisonment for life and a fine of $50,000. SDCL 22-6-1(3). Madetzke pleaded not guilty.

[¶4.] Madetzke and the State subsequently commenced plea bargaining. Madetzke agreed to plead guilty to one count of second-degree robbery, which is a Class 4 felony. SDCL 22-30-7. He also agreed to admit to having been convicted previously of four felonies, but he disputed that any of those felonies were violent offenses. Madetzke's attorney secured the State's promise to amend its habitual-criminal information to seek sentence enhancement under SDCL 22-7-8.1 (for nonviolent habitual criminals) instead of SDCL 22-7-8 (for violent habitual criminals). Thus, the parties agreed that Madetzke's offense would be sentenced as a Class 2 felony (which carries a maximum penalty of imprisonment for 25 years and a fine of $50,000 under SDCL 22-6-1(5)) instead of as a Class C felony. The State further agreed to drop the grand-theft charge and to recommend imposing a maximum sentence of 20 years. Madetzke's attorney also asked the State to recommend concurrent sentences for the Minnehaha and Lincoln County robbery charges, but the State declined.

[¶5.] On May 8, 2012, Madetzke appeared before the Honorable Bradley Zell to plead guilty to second-degree robbery. Pursuant to the plea agreement, Judge Zell sentenced Madetzke to imprisonment for 25 years with 5 years suspended. In discussing the possibility of parole with Madetzke, Judge Zell calculated that under

SDCL 24-15A-32, Madetzke could be eligible for parole after 8 years. However, Judge Zell's calculation was based on the mistaken belief that second-degree robbery is considered a nonviolent offense for purposes of establishing an initial parole date. Because second-degree robbery is considered a violent offense under SDCL 24-15A-32, Madetzke will not be eligible for parole until he serves 13 years of his 20-year sentence.[1] Neither Madetzke's attorney nor the State brought the error to Judge Zell's attention.

[¶6.]    Madetzke did not file an appeal, nor did he file a motion to modify his sentence within the two-year period permitted by SDCL 23A-31-1. Instead, on April 18, 2014, he filed a petition for writ of habeas corpus asking the circuit court to vacate his sentence. The Honorable Joseph Neiles issued the writ on April 28, 2016. Robert Dooley, Warden of the Mike Durfee State Prison, returned the writ on May 9. On February 21, 2017, following a hearing, Judge Neiles denied Madetzke's request to vacate his sentence. Judge Neiles issued a certificate of probable cause on May 24, and Madetzke filed a notice of appeal with this Court on June 21.

[¶7.]    On appeal, Madetzke raises the following issue: Whether the legal assistance Madetzke received from his trial attorney was so ineffective as to warrant vacating his sentence.

---

1.    Under SDCL 24-15A-32, an inmate convicted of a nonviolent Class 4 felony is required to serve 40% of the sentence before being eligible for parole if the inmate has been convicted previously of three or more felonies. But if the Class 4 felony is a violent crime, that inmate would be required to serve 65% of the sentence before being eligible for parole.

## Standard of Review

[¶8.]		As in other appeals, this Court reviews a habeas court's "factual findings under the clearly erroneous standard and legal conclusions under the de novo standard." *McDonough v. Weber*, 2015 S.D. 1, ¶ 15, 859 N.W.2d 26, 34 (quoting *Meinders v. Weber*, 2000 S.D. 2, ¶ 5, 604 N.W.2d 248, 252). "A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Id.* ¶ 16, 859 N.W.2d at 34 (quoting *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 9, 724 N.W.2d 858, 862).

## Analysis and Decision

[¶9.]		Madetzke argues that the legal assistance rendered by his trial attorney was ineffective and that consequently, his sentence should be vacated. Because a petition for a writ of habeas corpus is "a collateral attack on a final judgment[,]" the scope of issues cognizable in such a petition is limited. *Id.* ¶ 15, 859 N.W.2d at 33-34 (quoting *Vanden Hoek*, 2006 S.D. 102, ¶ 8, 724 N.W.2d at 861). Habeas corpus "deals only with such radical defects as render the proceeding or judgment absolutely void." *Acker v. Adamson*, 67 S.D. 341, 347, 293 N.W. 83, 85 (1940) (quoting *State ex rel. Anderson v. Jameson*, 51 S.D. 540, 545, 215 N.W. 697, 699 (1927)).[2] Thus, the lack of personal or subject-matter jurisdiction or in certain cases, the deprivation of basic constitutional rights divests a trial court of the power to render a judgment and sentence. *See McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34. But "[e]rrors and irregularities in the proceedings of a court having

---

2.	The scope of issues reviewable on a writ of habeas corpus is statutorily defined in SDCL 21-27-16. This list has not changed materially since before statehood. *See* Dak. Rev. Codes, Code of Crim. Proc. § 673 (1877).

jurisdiction of the person, subject matter[,] and power to decide questions of law[] are not reviewable though they may have been grounds for reversal on direct appeal." *State ex rel. Ruffing v. Jameson*, 80 S.D. 362, 366, 123 N.W.2d 654, 656 (1963).

[¶10.] Ineffective assistance of counsel can amount to a constitutional violation significant enough to render a conviction and sentence void. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063-64, 80 L. Ed. 2d 674 (1984); *McDonough*, 2015 S.D. 1, ¶¶ 21-23, 859 N.W.2d at 36-37. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064. The petitioner has the burden of proving that "considering all the circumstances[,]" his attorney's performance was objectively unreasonable "under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2064-65. But "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689, 104 S. Ct. at 2065. The petitioner also has the burden of "affirmatively prov[ing] prejudice"—i.e., the petitioner "must show that [the alleged errors] actually had an adverse effect on the defense." *Id.* at 693, 104 S. Ct. at 2067.

[¶11.] Madetzke contends that his attorney should have filed a motion to "correct" the habitual-criminal information's implication that one of his previous

felony convictions was for a violent offense.[3] Madetzke asserts that he would not have pleaded guilty if he had known the maximum penalty was imprisonment for 25 years instead of imprisonment for life. He also contends that his attorney should have advised Judge Zell that his parole-eligibility calculations were incorrect. According to Madetzke, Judge Zell imposed a 20-year sentence only because he mistakenly believed that second-degree robbery was a nonviolent offense and that Madetzke would serve only 7 to 8 years of the sentence. Thus, Madetzke concludes that his sentence should be vacated.

[¶12.] Madetzke's arguments are not persuasive. His trial attorney decided to resolve the dispute regarding the State's habitual-criminal information via plea bargaining rather than adjudication. Even assuming without deciding that this decision amounted to ineffective assistance of counsel, Madetzke would need to prove that the decision actually had an adverse effect on his defense. *Id.* In the context of this argument, Madetzke would need to prove that the circuit court would likely have concluded that none of his prior felony convictions were crimes of violence. Any felony perpetrated by "us[ing] force, or . . . a dangerous weapon, or . . . any explosive or destructive device" is a crime of violence. SDCL 22-1-2(9). Despite

---

3.     An information is a charging instrument, *see* SDCL 23A-6-1, and Madetzke offers no authority for the proposition that a court can amend the substance of a charging instrument filed by the State. Nothing in SDCL chapter 22-7, which pertains to habitual criminals, indicates a court may modify an information. And SDCL chapter 23A-6, which pertains to an indictment or information, mentions only one circumstance in which a court may amend a charging instrument: "A circuit court upon motion may strike surplusage from an indictment or information." SDCL 23A-6-18 (Rule 7(d)). If the courts were generally able to modify a prosecutor's information, SDCL 23A-6-18 would serve no purpose. Thus, while a defendant may contest the merits of a charging instrument at trial, he cannot directly affect its contents.

Madetzke's burden of proof, he failed to provide any evidence on this issue in the habeas proceedings. Judge Neiles specifically found: "There is no evidence in front of this [c]ourt as to whether any of [Madetzke's] prior convictions was a crime of violence, that is, neither [Madetzke] nor the [W]arden offered any evidence on this point." Madetzke does not challenge this finding as clearly erroneous. Because Madetzke—not the State—has the burden of proof at this point, *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, and because there is a strong presumption that Madetzke's attorney provided adequate legal assistance, *id.*, this Court cannot assume that Madetzke would have prevailed in an adjudication of the question whether any of his prior felony convictions were crimes of violence. And without proving that he would have prevailed in challenging the habitual-criminal information, Madetzke cannot prove that his trial attorney's decision prejudiced him.

[¶13.]      Madetzke's argument that his trial attorney should have corrected Judge Zell's parole-eligibility calculations at sentencing is similarly unpersuasive. Madetzke contends that Judge Zell intended Madetzke to be actually imprisoned for only 8 years and that Judge Zell sentenced him to imprisonment for 20 years on the mistaken belief that Madetzke would be required to serve 40% of his sentence. But Madetzke's trial attorney testified during the habeas proceedings that she viewed Judge Zell's parole-eligibility calculation as simply an estimation. There is strong support for this conclusion—both in caselaw and in this record. "[A]s a matter of law, a court's parole eligibility advisement is not part of the court's sentence." *State v. Semrad*, 2011 S.D. 7, ¶ 7, 794 N.W.2d 760, 763 (discussing now-repealed

SDCL 23A-27-48, which required a sentencing court to provide an "estimate" of parole eligibility). "Indeed, parole eligibility could not be part of a judicial sentence because parole is not a judicial power: it is an executive act." *Id.* Thus, as Judge Neiles concluded in the habeas proceedings, Judge Zell "did not say I want to craft a sentence that will make you eligible for parole in 7 or 8 years, and this is the sentence I have calculated that will do that"; rather, Judge Zell "was only giving the defendant [an] opinion as to how much time [Judge Zell] thought [Madetzke] would serve before becoming parole eligible."

[¶14.]     The foregoing conclusion is supported by the broader context of Judge Zell's comments at the sentencing hearing. Judge Zell clearly communicated to Madetzke that his actual release date would be determined by the South Dakota Board of Pardons and Paroles and that Madetzke's behavior could affect his parole eligibility. Judge Zell told Madetzke that he could be required to serve all 20 years of the sentence imposed and that depending on his behavior, he may even have to serve the 5 years that were suspended. Judge Zell further noted that the length of time Madetzke would be imprisoned would also depend on any sentence he might receive for the burglary charge in Lincoln County. In light of the foregoing, it was not objectively unreasonable for Madetzke's attorney to conclude there was no reason to correct Judge Zell.

[¶15.]     Even if the failure to correct Judge Zell amounted to ineffective assistance of counsel, in order to establish prejudice, Madetzke would need to prove that Judge Zell would have imposed a different sentence had Madetzke's attorney pointed out the parole-eligibility miscalculation. But again, Judge Neiles found that

Madetzke failed to place any "evidence in this record to suggest that Judge Zell would have imposed a different sentence had he known the correct status of this conviction under the [crime-of-violence] definition." Again, Madetzke does not challenge this finding as clearly erroneous, nor does the record support such a conclusion.[4] Thus, Madetzke has not met his burden of proving prejudice on this issue either.

**Conclusion**

[¶16.] Madetzke failed to offer evidence establishing that his prior felony convictions were nonviolent offenses; therefore, he failed to prove that challenging the State's habitual-criminal information would have been successful. Likewise, Madetzke failed to offer evidence that Judge Zell would have imposed a different sentence had Madetzke's attorney pointed out the parole-eligibility miscalculation.

---

4. In his findings of fact and conclusions of law, Judge Neiles noted:

> Judge Zell was not called by either petitioner or respondent, so we do not know his position regarding the parole eligibility rule, that is, we don't know if Judge Zell would have imposed a different sentence had he known that Robbery 2nd was a crime of violence, subject to the 65% rule for parole eligibility rather than the 40% rule for cases where the conviction is not a crime of violence.

Madetzke devotes a substantial portion of his briefs to arguing against the notion that he should have called Judge Zell as a witness. Indeed, this Court has explicitly held that a sentencing judge may not testify in subsequent habeas proceedings. *Ramos v. Weber*, 2000 S.D. 111, ¶ 20, 616 N.W.2d 88, 94-95 (describing such testimony as "wholly inadmissible"); *see also Loop v. Class*, 1996 S.D. 107, ¶ 19, 554 N.W.2d 189, 192-93 (declining to "endorse such a procedure"); *cf. Adolph v. Grant Cty. Bd. of Adj't*, 2017 S.D. 5, ¶ 14 n.3, 891 N.W.2d 377, 382 n.3 ("We question the propriety of deposing the decision maker in a quasi-judicial proceeding."). Regardless, this prohibition does not relieve Madetzke of his burden of proving that his attorney's conduct had an adverse effect on his defense. *See Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

Thus, Madetzke failed to meet his burden of proving the alleged errors in his trial attorney's performance "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067. So even assuming without deciding that Madetzke received ineffective assistance of counsel, he is not entitled to relief.

[¶17.] We affirm.

[¶18.] ZINTER, SEVERSON, KERN, and JENSEN, Justices, concur.