#28760-a-MES
**2019 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRAD REAY,                                                    Petitioner and Appellant,

v.

DARIN YOUNG, Warden,
S.D. State Penitentiary,                                     Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Retired Judge

* * * *

ROBERT T. KONRAD of
Olinger, Lovald, McCahren,
  Van Camp & Konrad, P.C.
Pierre, South Dakota                          Attorneys for petitioner and
                                              appellant.


JASON R. RAVNSBORG
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                          Attorneys for respondent
                                              and appellee.

* * * *

ARGUED AUGUST 27, 2019
OPINION FILED **11/20/19**

SALTER, Justice

[¶1.]     A jury convicted Brad Reay of first-degree murder in the death of his wife, Tami.  He received a mandatory sentence of life in prison without the possibility of parole.  After we affirmed Reay's conviction on direct review, he sought a writ of habeas corpus, alleging his trial counsel rendered ineffective assistance.  The habeas court denied relief but issued a certificate of probable cause.  Reay appeals the habeas court's determination.  We affirm.

## Background

[¶2.]     The underlying criminal case dates back to late 2005.  At the time, Reay lived in Pierre with Tami and their daughter, Haylee, who was 13 years old at the time of trial.  Tami began an affair with a coworker in December of 2005, and the Reays' marriage rapidly deteriorated.  Though the Reays lived in the same home, they had separate bedrooms.  Tami continued her affair and suggested they divorce at the end of Haylee's school year.

[¶3.]     Tami was stabbed to death in an attack or series of attacks that most likely began in her bed sometime during the overnight hours of February 7-8, 2006.  When she was reported missing the next day, investigators concluded that Reay was involved in her disappearance and arrested him for first-degree murder.  Two days later, a South Dakota National Guard pilot flying over the Pierre area spotted a body, later identified as Tami, by the emergency spillway at the Oahe Dam.

[¶4.] The circuit court[1] appointed Rapid City attorney Tim Rensch to represent Reay, whose defense initially appeared to be that Tami was killed by an unknown assailant. After several months, though, Rensch testified that Reay mentioned "[t]here is another possibility[.]" Reay then, for the first time, explained to Rensch that Haylee had murdered Tami after allegedly expressing anger about her mother's extramarital affair. Reay claimed that he had encountered Haylee in a "catatonic" state immediately after the murder, still holding the hunting knife she had used as the murder weapon.

[¶5.] This theory became Reay's defense to the murder charge at his trial. He claimed that he was guilty only of covering up evidence of the crime by cleaning the house, disposing of the knife, and moving Tami's body. Three areas of physical evidence at trial figure prominently in this habeas appeal.

[¶6.] The first concerns a mark on Tami's left breast noted by forensic pathologist Dr. Donald Habbe during the autopsy. The mark was a broken straight-line abrasion on the skin. Dr. Habbe was uncertain of its origin, but testified that it could possibly be a bite mark or perhaps a mark from the hilt of the knife used to inflict a nearby stab wound. Regardless, Dr. Habbe was unable to definitively determine what caused the abrasion. At his trial, Reay argued that the mark was a bite mark resembling Haylee's gapped front teeth.

[¶7.] The second item of evidence was a towel that appeared to have a drop of blood on it. The towel, believed to have been from the Reay home, was found inside the vehicle Reay used to transport Tami's body. Subsequent testing revealed

---

1. The Honorable Kathleen F. Trandahl, Circuit Court Judge, now retired.

DNA belonging to Tami and a combination of DNA that could not be identified, but forensic analysis determined that Reay could not be excluded as a contributor. Reay argued at trial that the DNA testing results created the possibility of a third unidentified source of DNA, suggesting it could be Haylee.

[¶8.] Finally, investigators recovered a tarp near the Oahe Dam spillway that was stained with a large amount of blood and had a series of slits. The parties disagreed about whether these slits corresponded with all of the stab wounds on Tami's body. Reay admitted at trial that he had used the tarp to remove and transport Tami's body, claiming he had done so to protect Haylee and help her avoid responsibility for murdering her mother.

[¶9.] A jury convicted Reay of first-degree murder, and the circuit court imposed a mandatory sentence of life in prison without the possibility of parole. Reay appealed, and we affirmed his conviction in *State v. Reay*, 2009 S.D. 10, 762 N.W.2d 356.

[¶10.] In his amended habeas petition, Reay alleges that Rensch rendered ineffective assistance because he did not engage any expert witnesses to evaluate the possible bite mark, the towel, and the tarp. In Reay's view, experts in these areas would have been helpful to definitively tie the evidence to Haylee and strengthen his defense. Reay's habeas counsel also moved for the appointment of expert witnesses in the areas of "bite marks, DNA testing, and tool marks." The

circuit court[2] denied the motion, and Reay has not challenged that ruling on appeal.[3]

[¶11.] Rensch was the only witness at the habeas hearing. He testified that he did not engage experts in the areas Reay identifies because he could make arguments consistent with the defense theory without the experts. Engaging experts, in Rensch's view, would have accomplished little or nothing for the case and likely would have provided the State with some degree of notice, enabling prosecutors to counter the defense experts with tactical arguments and experts of their own.

[¶12.] The circuit court denied Reay's habeas petition, concluding he had not demonstrated that Rensch was ineffective. Reay presents one issue on appeal, which we restate as follows: Whether the circuit court erred when it concluded Reay was not deprived of effective assistance of counsel and denied his petition for habeas relief.

## Analysis

[¶13.] We review a circuit court's determination of a Sixth Amendment ineffective assistance of counsel claim as a mixed question, reviewing the court's decision on the constitutional issue de novo and its findings of fact for clear error. *Madetzke v. Dooley*, 2018 S.D. 38, ¶ 8, 912 N.W.2d 350, 353. A petitioner's

---

2. The Honorable John Brown, Circuit Court Judge, now retired.

3. The certificate of probable cause authorizes review only for the ineffective assistance of counsel claims.

ineffective assistance claim is analyzed under the familiar two-pronged standard set out in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).

[¶14.]    Both prongs of *Strickland* present demanding challenges for petitioners. Initially, "[a] habeas applicant must rebut the 'strong presumption' that counsel was competent." *Jenner v. Dooley,* 1999 S.D. 20, ¶ 16, 590 N.W.2d 463, 470 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986)). Our function is not to "second guess the decisions of experienced trial attorneys regarding matters of trial tactics unless the record shows that counsel failed to investigate and consider possible defenses . . . ." *Randall v. Weber*, 2002 S.D. 149, ¶ 7, 655 N.W.2d 92, 96 (quoting *Sprik v. Class*, 1997 S.D. 134, ¶ 24, 572 N.W.2d 824, 829). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

[¶15.] Under *Strickland's* second prong, we have held that prejudice from deficient representation exists when "there is a reasonable probability of a different outcome." *Knecht v. Weber*, 2002 S.D. 21, ¶ 5, 640 N.W.2d 491, 495. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Weddell v. Weber*, 2000 S.D. 3, ¶ 25, 604 N.W.2d 274, 281).

[¶16.] For each of the three areas of evidence Reay identifies here, Rensch's decision to not engage an expert witness was part of a sound trial strategy. As Rensch explained during his testimony, Reay's defense was not premised upon actually *solving* Tami's murder. Instead, it was designed to create doubt that Reay had killed Tami, while at the same time offering a plausible alternate explanation that Haylee had killed her. As a complimentary theme, Rensch attempted to sow skepticism about the investigation by suggesting that law enforcement officers were focused parochially on Reay and did not objectively consider the possibility that Haylee could be responsible.

[¶17.] For instance, Rensch was not inclined to use an expert in bite mark evidence, also known as odontology, because Dr. Habbe had allowed for the possibility that the dashed-line mark on Tami's breast could be a bite mark. With this testimony, Rensch could simultaneously suggest that the marks matched Haylee's gap-tooth dentition and that the State had overlooked an important clue. He described the approach during his testimony at the habeas hearing:

> Here you had two dashes that we were able to argue were the
> daughter's bite and that was already a good piece of information
> for us. And what's even more so about that is that went along
> with my theory as it related to other matters like the DNA and
> the various things in the entire theory of the defense, which was
> that the government or the State intentionally stayed away from

anything that would support the contention that the little girl did it.

[¶18.]     We believe that this strategy fits within the realm of reasonable tactical decisions.  Rensch was able to suggest the possibility of a bite from gapped-front incisors, like Haylee's, through the forensic pathologist called by the State, all without alerting prosecutors to his theory before trial.[4]  Calling a defense odontology expert would most certainly have prompted the State to engage its own odontology expert, with the ensuing disagreement potentially harming the defense.  Alternatively, eliciting Dr. Habbe's acknowledgement that the mark could be a gap-tooth bite mark allowed Reay's attorney to present the bite mark theory to the jury without the risks created by an odontology "battle of the experts."  Under the circumstances, we believe Reay fails to demonstrate deficient performance by his trial counsel and is unable to overcome the strong presumption of competence.  Nor does Reay demonstrate the reasonable probability of a different result at trial.

[¶19.]     At the habeas hearing, Rensch testified that he utilized a similar strategy when he decided not to conduct expert DNA testing on the towel.  This, he

---

4.     The State focuses much of its argument upon its belief that the use of odontology as a method of matching an assailant's dentition to a victim's alleged bite wound has been widely discredited.  However, we need not determine the accuracy of that assertion as a general matter to decide this case under the constraints of *Strickland*.  Questions concerning the relevance and reliability of proffered expert testimony are better left to trial courts to determine in individual cases—not categorically—under our well-settled rules governing the admissibility of expert testimony.  *See State v. Huber*, 2010 S.D. 63, ¶¶ 17-37, 789 N.W.2d 283, 288-95 (applying the expert testimony standard set out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

explained, allowed him to advance Reay's defense while controlling the risk that DNA testing would actually be harmful to the defense:

> Before the trial the State knew that it was [Reay's] position that the daughter had done it and because of that, they collected Haylee's DNA and they also interviewed her about whether or not she killed her mother. But even though they collected her DNA, they never tested it against anything else . . . . So when I went into trial I didn't really care about getting a DNA test to try to prove that it was Haylee's [DNA] because I didn't want to take the risk that it was not Haylee's.

[¶20.]　　　An additional part of Rensch's strategy involved, to some extent, the element of surprise. He was concerned that testing the towel, even if it established the presence of Haylee's DNA, would alert the State to his argument before trial and allow prosecutors the chance to neutralize it by offering alternate benign theories explaining the DNA evidence.

[¶21.]　　　Beyond this, conclusive DNA testing of the towel would not have exonerated Reay or definitively established Haylee as the person responsible for her mother's murder. The habeas court reached the same conclusion and reasoned that finding Haylee's DNA on the towel "would not have had any significant impact on the outcome of the trial given the fact that she had access to the towel within the household before the murder and she could have imparted her DNA onto the towel from ordinary use." Furthermore, with advanced notice of defense testing,[5] the

---

5. At oral argument, Reay's counsel contended that Rensch's effort to consult with experts could have been shielded from disclosure as work product. We perceive no need to address that point of criminal procedure, but we do make two observations that render the argument academic in this appeal. First, Reay has not demonstrated how merely consulting with expert witnesses would have made a difference at trial. Instead, Reay's principal argument is premised upon the idea that the experts would have actually testified

(continued . . .)

State could have suggested any number of unremarkable scenarios to explain the presence of Haylee's DNA on a household towel.

[¶22.]    On the other hand, the DNA testing presented the risk that Haylee could be eliminated as a contributor to the unknown DNA on the towel. This, in turn, would have deprived Reay of the argument that the State's failure to test for her DNA was substandard police work.

[¶23.]    With regard to the tarp, Rensch testified that he did not consider using an expert in puncture or tool marks. For Rensch, the static state of the evidence suited his defense theory well because the slits in the tarp did not correspond to Tami's distinct stab wounds, but the slits in Tami's bed sheet did. Rensch explained:

> And in those [bed] sheets you could see corresponding marks that could have been . . . [a] very distinctive set of stab wounds coming down her chest. So . . . that's probably where those stab wounds occurred and there was little blood on those sheets. There's a lot more blood on the tarp.
>
> So what I thought was . . . the fact that those sheets had the small amount of blood on it . . . was consistent with the daughter stabbing the mother in the bed, and that the tarp was consistent with Brad scooping up the mother and spiriting her away in the tarp where she would have bled in the tarp. And also there wasn't . . . a knife to compare [the slit marks] to [because Reay] had admitted that he'd thrown the knife in the river.

[¶24.]    The habeas court determined that the strategy was reasonable, concluding that even if an expert could have opined that the slits in the tarp were

_____

(. . . continued)
> favorably to his defense. Second, it seems likely the State would have been aware of the pretrial testing that Reay contemplates. Certainly, analyzing the towel for DNA and examining the tarp would have required access to the State's evidence facility under the supervision of law enforcement officers.

caused by something other than a knife, the testimony would have "called unwanted attention to the tarp and potentially inflamed the jury." The court considered this a perilous gambit "in light of the inability of Reay's defense theory to explain why the quantity of blood on the tarp exceeded the quantity of blood in the bed where Reay's daughter allegedly killed her mother."

[¶25.] In this regard, engaging a tool expert would not have created a reasonable probability of a different result. Given the large amount of blood on the tarp compared to the bed sheet, a battle of tool mark experts may well have presented the jury with expert testimony that the marks on the tarp were consistent with puncture marks from the hunting knife. This evidence could have assisted the State's theory that Tami was stabbed initially several times while in bed, with most of the stab wounds coming later after Reay wrapped her in the tarp while she was still alive and actively fighting against her attacker.

[¶26.] Given the plausible explanations for not employing experts, we are not inclined to revisit Rensch's tactical decisions, which were reasonable to advance Reay's defense theory. We also agree with the habeas court that Reay cannot satisfy *Strickland*'s prejudice requirement by showing a reasonable probability that the outcome would have been different if Rensch had employed experts. For his part, Reay acknowledges that he cannot demonstrate the probability of a different result because he does not know whether any of the experts he has proposed would have provided helpful opinions.[6] Employing the three experts in the manner Reay

---

6.      Reay argues that Rensch's decision to forego consulting with prospective
        expert witnesses breaches the standard of reasonableness so profoundly that
                                                                        (continued . . .)

suggests was fraught with risk that the defense theory implicating Haylee would have grown weaker and the case against Reay stronger.[7]

## Conclusion

[¶27.] The habeas court did not err when it denied Reay's habeas petition. Reay has not met his burden to prove his trial counsel was ineffective when it made the strategic decision not to employ or consult experts. We affirm.

[¶28.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and HANSON, Circuit Court Judge, concur.

[¶29.] HANSON, Circuit Court Judge, sitting for DEVANEY, Justice, disqualified.

---

(. . . continued)

it effectively constitutes per se ineffective assistance of counsel without a showing of prejudice. We disagree and choose to apply our precedent that requires a habeas petitioner to establish both prongs of the well-settled *Strickland* analysis. *See Knecht*, 2002 S.D. 21, ¶ 20, 640 N.W.2d at 500 ("Failure to hire an expert is not, per se, error.").

7. Reay claims that, "[t]aken together, the failure of Rensch to hire appraise [sic] experts and investigate the case" constitutes ineffective assistance of counsel. We are unwilling to accept this cumulative error argument because to do so would recognize a degree of error that is greater than the sum of its parts. *See New v. Weber*, 1999 S.D. 125, ¶ 25, 600 N.W.2d 568, 577 ("Having found no one issue sufficient to declare [counsel's] representation deficient or prejudicial, we cannot now say that the sum of any errors requires a new trial.").